UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EDWARD H. RECHBERGER, IV, as Trustee                    **REPORT**
 under a Trust Agreement dated March 11, 1998,           **and**
 as Amended February 26, 2001,                       **RECOMMENDATION**
LEWIS J. SERVENTI, and
KAREN K. RECHBERGER,                                 **07-CV-00061A(F)**

                                   Plaintiffs,

              v.

DUSTIN C. HURLBURT,
LISA HURLBURT,
HURLBURT INVESTMENT CLUB, and
ROBERT M. BURT,

                                   Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ROBERT M. BURT,
                            Cross-Claimant,
              v.

DUSTIN C. HURLBURT,
LISA HURLBURT, and
HURLBURT INVESTMENT CLUB,

                            Cross-Defendants.
_____

APPEARANCES:          DAMON MOREY LLP
                      Attorneys for Plaintiffs
                      BRIAN D. GWITT,
                      DAVID S. WIDENOR, and
                      WILLIAM F. SAVINO, of Counsel
                      200 Delaware Ave., Suite 1200
                      Buffalo, New York 14202

                      JOEL L. DANIELS, ESQ.
                      Attorney for Defendants and Cross-Defendants
                       Dustin C. Hurlburt, Lisa Hurlburt,
                       and Hurlburt Investment Club
                      107 Delaware Avenue, Suite 1366
                      Buffalo, New York 14202

LECLAIR KORONA GIORDANO COLE LLP
Attorneys for Defendant Burt
STEVEN E. COLE, of Counsel
150 State Street
Suite 300
Rochester, New York 14614

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara, on February 5, 2007. The matter is presently before the court on Defendant and Cross-Defendant Burt's motions for summary judgment (Doc. No. 62), filed October 20, 2008, and for sanctions (Doc. No. 63), filed November 10, 2008.

## BACKGROUND

Plaintiffs Edward H. Rechberger, IV ("Rechberger"), Lewis J. Serventi ("Serventi"), and Karen K. Rechberger ("Karen Rechberger") (together, "Plaintiffs"), commenced this action on March 11, 2004, in New York Supreme Court, Wyoming County, asserting, under New York law, seven claims for relief against defendants Dustin C. Hurlburt ("Hurlburt"), Lisa Hurlburt ("Lisa Hurlburt") ("the Hurlburts"), and Ameritrade, Inc. ("Ameritrade"), to recoup money Plaintiffs' lost through a fraudulent investment scheme perpetrated by the Hurlburts, and for which Hurlburt, on June 22, 2004, pleaded guilty to one count of mail fraud in violation of 18 U.S.C. § 1341. On January 3, 2007, Plaintiffs filed a verified amended complaint (Doc. No. 1-2) ("the Complaint") naming as defendants Hurlburt, Lisa Hurlburt, the Hurlburt Investment Club ("the Enterprise"), and adding Robert M. Burt ("Burt" or "Defendant") (together, "Defendants") in connection with Defendants' operation of the Enterprise, in violation of

the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1861 *et seq*. (Fifth Cause of Action), asserting state law claims for conversion (First Cause of Action), fraud and misrepresentation (Second Cause of Action), breach of fiduciary duty (Third Cause of Action), breach of contract (Sixth Cause of Action), breach of duty to a third party beneficiary under a contract (Seventh Cause of Action), and breach of implied contract (Eighth Cause of Action), and seeking an accounting and imposition of a constructive trust over Defendants' assets (Fourth Cause of Action) ("the state law claims").

On February 1, 2007, all Defendants joined in removing the action to this court, asserting as the basis for removal, federal question jurisdiction based on Plaintiffs' RICO claim.[1]  On February 2, 2007, Defendant Burt filed an answer (Doc. No. 5), asserting against Defendants Hurlburt, Lisa Hurlburt and the Enterprise ("the Hurlburt Defendants"), cross-claims for contribution and indemnification with regard to Plaintiffs' claims against Burt.  On March 7, 2007, Defendants Hurlburt and Lisa Hurlburt filed answers to the cross-claims (respectively, Doc. Nos. 10 and 11).  On April 9, 2007, Plaintiffs filed a RICO Case Statement Pursuant to Local Rule 5.1(b) (Doc. No. 14) ("RICO Statement"), in which Plaintiffs specify the particulars of their RICO claim.

On October 30, 2008, Defendant Burt filed the instant motion for judgment on the pleadings or, alternatively, summary judgment (Doc. No. 62) ("Defendant's summary judgment motion").  The motion is supported by an attached statement of

---

[1] State courts have concurrent jurisdiction with federal courts over civil RICO claims.  *Simpson Elec. Corp. v. Leucadia, Inc.*, 530 N.E.2d 860, 866 (N.Y. 1988).  Further, the statutory provision forbidding removal of an action more than one year after commencement of the action applies only when the jurisdictional basis for removal is diversity.  28 U.S.C. § 1446(b).

facts (Doc. No. 62-2) ("Defendant's Statement of Facts"), a memorandum of law (Doc. No. 62-3) ("Defendant's Summary Judgment Memorandum"), and the Declaration of Steven E. Cole, Esq. (Doc. No. 62-4) ("Cole Summary Judgment Declaration"), with attached exhibits A through M ("Defendant's Summary Judgment Exh(s). __").

On November 10, 2008, Defendant Burt filed the instant motion for sanctions, costs, and attorneys' fees (Doc. No. 63) ("Defendant's sanctions motion"). The motion is supported by the attached memorandum of law (Doc. No. 63-2) ("Defendant's Sanctions Memorandum"), and the Declaration of Steven E. Cole (Doc. No. 63-3) ("Cole Sanctions Declaration"), with attached exhibits A through D ("Defendant's Sanctions Exh(s). __").

In opposition to summary judgment, Plaintiffs filed, under seal, on December 5, 2008, a response to Defendant's Statement of Facts (Doc. No. 67) ("Plaintiffs' Statement of Facts"), the Declaration of Brian D. Gwitt, Esq. ("Gwitt") ("Gwitt Summary Judgment Declaration"), with attached exhibits A through G ("Plaintiffs' Summary Judgment Exh(s). __"), the Declaration of Lewis J. Serventi (Doc. No. 67-10) ("Serventi Summary Judgment Declaration"), and a memorandum of law (Doc. No. 67-11) ("Plaintiffs' Summary Judgment Memorandum").

On December 12, 2008, Plaintiffs filed, under seal, in opposition to Defendant's Sanctions Motion the Declaration of Lewis J. Serventi (Doc. No. 69) ("First Serventi Sanctions Declaration"), a memorandum of law (Doc. No. 71) ("Plaintiffs' Sanctions Memorandum"), the Declaration of William F. Savino, Esq. ("Savino") (Doc. No. 72) ("Savino Declaration"), the Declaration of Gwitt (Doc. No. 73) ("Gwitt Sanctions Declaration"), with attached exhibits A through H ("Plaintiffs' Sanctions Exh(s). __"), and

another Declaration of Lewis J. Serventi (Doc. No. 74) ("Second Serventi Sanctions Declaration").

On December 31, 2008, Defendant filed in further support of summary judgment the Reply Declaration of Steven J. Cole (Doc. No. 76) ("Cole Summary Judgment Reply Declaration"), and a reply memorandum of law (Doc. No. 76-2) ("Defendant's Summary Judgment Reply Memorandum"). On December 31, 2008, Defendant filed in further support of sanctions a reply memorandum of law (Doc. No. 77) ("Defendant's Sanctions Reply Memorandum").

By Order to Show Cause, filed November 5, 2009 (Doc. No. 79) ("Show Cause Order"), Plaintiffs were directed to show cause why their civil RICO claim asserted against Hurlburt and Burt was not barred by 18 U.S.C. § 1964(c), removing securities fraud as a predicate offense to a civil RICO claim, as well as whether, if the RICO claim were so barred, the action should be allowed to proceed on the state law claims or remanded to state court. Accordingly, on November 20, 2009, Plaintiffs filed Plaintiffs' Response to Order to Show Cause (Doc. No. 80) ("Plaintiffs' Show Cause Response"), and the Declaration of Brian D. Gwitt, Esq. (Doc. No. 81) ("Gwitt Show Cause Declaration"), with attached exhibits A through D ("Plaintiff's Show Cause Exh(s).__"). On December 4, 2009, Burt filed Defendant Burt's Memorandum of Law in Response to the Court's Order to Show Cause Issued on November 5, 2009 (Doc. No. 82) ("Burt's Show Cause Memorandum"). Oral argument was deemed unnecessary.

Based on the following, Defendant Burt's motion should be GRANTED as to the RICO claim, the court should refrain from exercising supplemental jurisdiction over the remaining state claims which should be REMANDED to state court; alternatively, should

the District Judge decide to exercise supplemental jurisdiction over the state law claims as asserted against Burt, then Defendant Burt's motion for judgment on the pleadings and summary judgment on the state law claims should be DENIED; Defendant Burt's motion for sanctions should be DENIED.

## **FACTS**[2]

Plaintiffs to this action include Lewis J. Serventi ("Serventi"), his grandson Edward H. Rechberger, IV ("Rechberger), and Rechberger's wife, Karen K. Rechberger ("Karen Rechberger"). Rechberger is a trustee of the Lewis J. Serventi Revocable Inter Vivos Trust (the "trust"), and is authorized to act on behalf of the trust. At all times relevant to the allegations in the Complaint, Defendants Dustin C. Hurlburt ("Hurlburt"), his wife Lisa Hurlburt ("Lisa Hurlburt"), and Robert M. Burt ("Burt"), operated the Hurlburt Investment Club ("the Enterprise"), also a defendant to this action ("Defendants"). Although it is not alleged that Serventi personally invested in the Enterprise, Defendants do not dispute that Serventi has standing to assert claims against Defendants based on Serventi's status as settlor of the trust.

Through the Enterprise, Defendants engaged in the practice of day trading in which financial investment instruments, *i.e.*, stocks, stock options, and futures contracts, are bought and sold within the same trading day, hopefully at a higher price so as to realize a short-term profit. The trades were conducted electronically over the internet using a computer maintained by Hurlburt. Defendants initially invested funds

---

[2] Taken from the pleadings and motion papers filed in this action.

solicited from third parties through DATEK Online Financial Services, Ltd. ("DATEK"), which later merged with Ameritrade, Inc. ("Ameritrade"). Although the parties agree that Hurlburt conducted most of the trades through an on-line trading account in the name of the Enterprise, it is disputed whether Burt ever conducted any of the day trading, prepared financial statements for clients of the Enterprise, or whether Burt's role was limited to finding clients to invest in the Enterprise, and that the actual trading on behalf of the Enterprise was done by either Hurlburt or his wife Lisa. The Enterprise's principal office for investment transactions was located in the Hurlburt's home in the Village of Warsaw, New York.

During the summer of 2003, several meetings were held between Plaintiffs and Defendants at which the possibility of Plaintiffs investing funds in the Enterprise was discussed. The number of meetings, as well as which Defendants and Plaintiffs met at each meeting, and which Defendants made statements to entice Plaintiffs to invest in the Enterprise, is disputed. Plaintiffs maintain that on numerous occasions in late July or early August 2003, Burt met with Serventi in Serventi's business office where Burt made statements in an attempt to induce Serventi to invest in the Enterprise. At these meetings, Burt allegedly provided Serventi with written Enterprise performance reports reflecting profits Burt had realized on money Burt had invested in an account with the Enterprise.

On August 27, 2003, Serventi and Rechberger, acting on behalf of the trust, met with Hurlburt and Lisa Hurlburt who induced Plaintiffs to contribute funds to invest into the Enterprise. During the meeting, Hurlburt allegedly provided Serventi and Rechberger with written performance reports showing Hurlburt's purported past success

with the Enterprise.

On August 29, 2003, both Rechberger, acting on behalf of the trust, and Karen Rechberger telephoned Hurlburt and advised they had decided to invest in the Enterprise with Hurlburt acting as their investment counselor, financial asset manager, and agent. On September 8, 2003, Hurlburt provided Rechberger with a form entitled "Investment Club Member Signature Page for Trading Authorization" ("Trade Authorization"), which both Rechberger and Karen Rechberger signed, thereby authorizing Hurlburt to act as their agent with regard to the Enterprise, through which Hurlburt was to trade investment securities on their behalf.

On September 11, 2003, Rechberger met Hurlburt[3] at the Enterprise's office in Warsaw where Rechberger delivered to Hurlburt two checks payable to the Enterprise ("the checks"), including a $ 300,000 check from the trust, drawn by Rechberger as trustee, and a $ 25,000 check drawn on a securities trading account Rechberger maintained in his own name. Plaintiffs explain that the $ 25,000 had been transferred to Rechberger's securities trading account from a securities trading account Karen Rechberger maintained in her name, but which did not provide a check writing option. Complaint ¶ 35. Upon receiving the checks from Rechberger, Hurlburt provided Rechberger with written receipts for the checks, thereby recognizing that Hurlburt had received the checks "for investment purposes." Other than receiving fabricated investment account statements and some correspondence, according to Plaintiffs, there was no contact between Plaintiffs and Defendants after September 11, 2003.

---

[3] No other Defendant is alleged to have been present at this meeting.

It is undisputed that on September 12, 2003, the checks were submitted to the respective banking institutions on which they were drawn, and were honored for the stated amounts, with the funds remitted to the Enterprise. "Account Balance" statements dated September 23, 2003, show Ameritrade accounts, fabricated by the Enterprise, were opened in Serventi's name in the amount of $ 300,000, and in Karen Rechberger's name in the amount of $ 25,000. Both Account Balance statements contained false Ameritrade account numbers. Between September 23 and October 30, 2003, the trust and Karen Rechberger were mailed fabricated Enterprise statements reflecting purported transactions made by the Enterprise on behalf of their respective accounts and depicting profits for both accounts.

In November 2003, the Hurlburt residence was searched by Federal Bureau of Investigation ("FBI") agents, who seized the computers on which Hurlburt conducted day trades for the Enterprise, effectively shutting down the Enterprise. On November 17, 2003, the FBI seized $109,104 in U.S. currency from Ameritrade Inc. account number 87234717 in Hurlburt's name, and Hurlburt voluntarily surrendered to the FBI an additional $ 4,696.

On January 6, 2004, Serventi and Karen Rechberger each received a letter from the FBI advising they had been identified as victims in an FBI forfeiture investigation involving the Enterprise, and that the FBI had seized $ 109,104.40 in U.S. funds from Hurlburt's Ameritrade account, and an additional $ 4,695.98 in U.S. Currency. The letters further advised that through the forfeiture proceedings initiated by the United States Department of Justice, Serventi would recover $ 35,515.53 of the $ 300,000 invested on behalf of the trust, and Karen Rechberger would receive $ 2,949.86 of her

original $ 25,000 invested.  By letter to Hurlburt dated February 18, 2004, Rechberger demanded the return of all funds invested with the Enterprise on behalf of the trust and Karen Rechberger, plus any gains or profits, and that both accounts be closed.

On June 22, 2004, Hurlburt pleaded guilty to one count of mail fraud in violation of 18 U.S.C. § 1341.  As noted, on March 11, 2004, Plaintiffs commenced this action in New York Supreme Court, Wyoming County, suing the Hurlburts and Ameritrade.  On August 26, 2005, Hurlburt was sentenced to 30 months incarceration, and ordered to pay restitution in the amount of $ 847,461.10.  The mail fraud conviction was in connection with Hurlburt's mailing of fraudulent statements to unnamed clients of the Enterprise.  Burt was never criminally charged or prosecuted in connection with Burt's involvement with the Enterprise.

Plaintiffs maintain that the Enterprise was nothing more than a scam designed to cheat Plaintiffs and others out of their money.  Plaintiffs maintain that Burt originally invested his entire life savings, including money from Burt's retirement accounts, the equity in his home, and Burt's savings accounts with the Enterprise, but, by the summer of 2003, Burt's entire investment had been lost.  At that point, Plaintiffs submit, Burt, to recoup his losses, began to solicit funds from others for the Enterprise, taking a portion of all new investment funds by withdrawing money immediately, with Hurlburt's connivance, after the new clients' money was deposited into the Enterprise's account, including money obtained from Plaintiffs.  According to Plaintiffs, Burt and the Hurlburts created false investment statements showing Burt enjoyed sizable profits on funds Burt had invested with the Enterprise which Burt used to entice Plaintiffs into investing into the Enterprise.  Burt also allegedly caused Hurlburt to take out a $1 million life

insurance policy naming Burt as the policy's sole beneficiary, and listing Burt on the policy as Hurlburt's business partner.

In contrast, Burt maintains that his involvement with the Enterprise was minimal, that he never solicited any funds for investment in the Enterprise, and that Burt also lost money in the Enterprise. Burt further maintains that while the criminal proceedings were pending against Hurlburt, Plaintiffs' attorneys and Hurlburt verbally agreed that in exchange for Hurlburt's giving deposition testimony implicating Burt in the fraudulent investment scheme, Plaintiffs would soften their position on Hurlburt's criminal sentencing. After Burt was sentenced on August 26, 2005, Plaintiffs settled their claim against Ameritrade. On January 4, 2007, Plaintiffs amended their complaint to assert the RICO violation and include Burt as a defendant because Plaintiffs believe Burt has funds out of which Plaintiffs can recoup their losses.

## DISCUSSION

With regard to all claims alleged against him, Defendant Burt moves for judgment on the pleadings or, alternatively, for summary judgment, on all claims alleged against him.[4] A plain reading of the Complaint, including the exhibits attached to the Complaint and documents incorporated by reference, establishes that Plaintiffs' RICO claim is barred by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 18 U.S.C. § 1964(c), such that Plaintiffs have failed to state a RICO claim against any

---

[4] Defendants Hurlburt, Lisa Hurlburt, and the Enterprise have not filed any motions seeking dismissal or summary judgment on any of the claims alleged against them. Further, as Defendant Burt's motions are directed only toward Plaintiff's claims against Burt, the Hurlburt Defendants have not appeared with regard to the pending motions.

Defendant.  Plaintiffs' RICO claim therefore should be DISMISSED for failure to state a

claim, and the court should refrain from exercising supplemental jurisdiction over

Plaintiffs' state law claims.   Additionally, the court will not address Burt's alternative

request for summary judgment on the RICO claim.  Alternatively, the conviction

exception to the PSLRA bar renders the RICO claim actionable only as against

Defendant Hurlburt, based on Hurlburt's prior mail fraud conviction.[5]  In any event,

Defendant Burt's request for sanctions should be DENIED.


### 1.    Judgment on the Pleadings/Summary Judgment

As stated, Defendant Burt moves for judgment on the pleadings or, alternatively,

for summary judgment, on all claims alleged against him.  With regard to Burt's initial

request for judgment on the pleadings, the same analysis applicable to a Fed. R. Civ. P.

12(b)(6) motion to dismiss applies to a Fed. R. Civ. P. 12(c) motion for judgment on the

pleadings.  *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).  In particular, "'[o]n

a motion to dismiss or for judgment on the pleadings, [the court] must accept all

allegations in the complaint as true and draw all inferences in the non-moving party's

favor.'" *LaFaro v. New York Cardiothoracic Group, PLLC*, 570 F.3d 471, 475 (2d Cir.

2009) (quoting *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003)

(bracketed material added and additional quotation omitted).  "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

_____

[5] Because the undersigned is recommending with regard to the RICO claim granting judgment on
the pleadings or, alternatively, summary judgment, and that the court refrain from exercising supplemental
jurisdiction over the state claims, remanding such claims to state court, whether Plaintiffs' state claims
withstand judgment on the pleadings and summary judgment is addressed only in the alternative that the
RICO claim against Hurlburt remains as a basis for federal claim jurisdiction in this court.

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570. The court, however, is "not bound to accept as true legal conclusions couched as factual allegations." *LaFaro*, 570 F.3d at 475-76 (citing *Iqbal*, 129 S.Ct. at 1950-51).

Generally, a motion for judgment on the pleadings must be based upon the pleadings, and not on additional evidence submitted by any party. *See Sira v. Morton*, 380 F.3d 57, 66-67 (2d Cir. 2004) (observing that where moving party submits material outside the pleadings in support of motion for judgment on the pleadings, the motion should be converted to a motion for summary judgment). "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira*, 380 F.3d at 67 (citing cases and Fed. R. Civ. P. 10(c)("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")). As such, where a complaint explicitly references and relies on documents to establish the basis for the claims, such documents are incorporated by reference into the complaint and may be considered by the court on a motion for judgment on the pleadings. *Id*. Furthermore, in determining whether Plaintiffs have sufficiently pleaded a RICO claim, the court considers as true the facts alleged in the complaint, as supplemented by Plaintiffs' RICO Statement. *See City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 432 (2d Cir. 2008) (considering on motion to dismiss

RICO claim "the facts as alleged in the complaints and as supplemented by the [plaintiff's] RICO statements," citing *McLaughlin v. Anderson*, 962 F.2d 187, 189 (2d Cir. 1992)).

As to Burt's alternative request for summary judgment, summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322.  Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).

Defendant Burt argues in support of the motion for judgment on the pleadings that the pleadings contain only vague and conclusory allegations insufficient to state the requisite predicate acts for a claim for relief under RICO.  Defendant's Summary Judgment Memorandum at 5-7.  In opposition to the motion, Plaintiffs maintain they have adequately pleaded a RICO claim sufficiently detailing Defendants' alleged

racketeering activity.  Plaintiffs' Summary Judgment Memorandum at 9-10.  Plaintiffs

also assert that because Defendant submits materials outside the pleadings for the

court to consider, the motion should be considered only as seeking summary judgment.

Plaintiffs' Summary Judgment Memorandum at 3.  In further support of judgment on the

pleadings, Defendant reiterates that Plaintiffs have failed to plead certain requisite

RICO elements, including that Burt committed predicate acts or engaged in a pattern of

racketeering activity.  Defendant's Summary Judgment Reply Memorandum at 2-6.


2.	**RICO**

"[RICO] Section 1964(c) authorizes a private suit be '[a]ny person injured in his

business or property by reason of a violation of [Title 18] § 1962."  *Sedima, S.P.R.L. v.*

*Imrex Company, Inc.*, 473 U.S. 479, 495 (1985) (quoting 18 U.S.C. § 1964(c))

(bracketed material added).  Section1962

> renders criminally and civilly liable 'any person' who uses or invests income
> derived 'from a pattern of racketeering activity' to acquire an interest in or to
> operate an enterprise engaged in interstate commerce, § 1962(a); who acquires
> or maintains an interest in or control of such an enterprise 'through a pattern of
> racketeering activity,' § 1962(b); who, being employed by or associated with such
> an enterprise, conducts or participates in the conduct of its affairs 'through a
> pattern of racketeering activity," § 1962(c); or, finally, who conspires to violate the
> first three subsections of § 1962, § 1962(d)."

*H.J. Inc. v. Northwestern Bell Telephone Company*, 492 U.S. 229, 232-33 (1989).

*See Sedima, S.P.R.L.*, 437 U.S. at 495 ("Section 1962 in turn makes it unlawful for 'any

person' - not just mobsters - to use money derived from a pattern of racketeering

activity to invest in an enterprise, to acquire control of an enterprise through a pattern of

racketeering activity, or to conduct an enterprise through a pattern of racketeering

activity." (citing 18 U.S.C. §§ 1962(a)-(c)).  Under RICO, a "pattern of racketeering

activity" consists of at least two predicate acts of racketeering activity, committed within

a 10-year period, and which amount to, or pose a threat of, continued criminal activity.

*First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir.

2004) (citing cases).  "If the defendant engages in a pattern of racketeering activity in a

manner forbidden by these provisions [§§ 1962(a)-(d)], and the racketeering activities

injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c)."

*Sedima, S.P.R.L.*, 437 U.S. at 495.  *See  City of New York v. Smokes-Spirits.com, Inc.*,

541 F.3d 425, 444-45 (2d Cir. 2008) (observing valid claim for civil RICO violation under

§ 1964 requires plaintiffs to first allege substantive RICO violation under § 1962, and

that such violation caused injury to plaintiff's business or property).  *See also DeFalco*

*v. Bernas*, 244 F.3d 286, 205 (2d Cir. 2001) (stating to establish a civil RICO claim,

plaintiff must demonstrate (1) violation of the substantive RICO statute, § 1962, (2)

injury to business or property, and (3) defendant's substantive RICO violation caused

plaintiff's injury).

    As such, to state a civil claim for damages under RICO, a plaintiff has two

pleading burdens, as rearticulated by *Iqbal*, *supra*, including alleging that (1) the

defendant violated the substantive RICO criminal statute, 18 U.S.C. § 1962 ("§ 1962"),

and (2) the plaintiff was "injured in his business or property *by reason of* [the

defendant's] violation of section 1962."  *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17

(2d Cir. 1983) (italics in original and bracketed material added)), *cert. denied*, 465 U.S.

1025 (1984).  Thus, only after adequately alleging Defendants violated § 1962 must

Plaintiffs meet the second burden, *i.e.*, alleging that Plaintiffs were, as a result of

Defendants' violation of § 1962, injured in business or property.  *Moss*, 719 F.2d at 17.

Here, Plaintiffs have failed to adequately plead the requisite two predicate acts to

establish a § 1962 violation.

> As relevant to this action, predicate acts of racketeering include
>
> (A) any act or threat involving . . . robbery, . . . which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United State Code: . . . section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), . . . section 1952 (relating to racketeering), . . . [and] section 2314 . . . (relating to interstate transportation of stolen property) . . . .

18 U.S.C. § 1961(1) ("§ 1961(1)") (bracketed material added).

Here, the Complaint, as supplemented by the RICO Statement, alleges as the

underlying predicate racketeering activity, the crimes of grand larceny in the fourth

degree under New York law (N.Y. Penal Law § 155.30), racketeering (18 U.S.C. §

1952), interstate transportation of stolen property (18 U.S.C. § 2314), mail fraud (18

U.S.C. § 1341), and wire fraud (18 U.S.C. § 1343).  Complaint ¶ 99; RICO Statement ¶

5(B) at 10-11. None of these allegations, however, constitutes predicate acts of

racketeering required for a RICO violation against Burt.[6]

In particular, as relevant to this case, "[a] person is guilty of grand larceny in the

fourth degree when he steals property and when: [1] The value of the property exceeds

one thousand dollars."   N.Y. Penal Law § 155.30[1] (McKinney's 2009).  However,

under § 1961(1), the only type of theft, chargeable as a felony under state law, that

---

[6] Plaintiffs' allegation that Burt, while executing the alleged fraudulent scheme, directed physical threats and intimidation toward Hurlburt, Complaint ¶ 55, is also insufficient for several reasons, including that Plaintiffs have failed to specify which New York statute such conduct allegedly violated.  Moreover, unless such threats included murder or kidnaping, neither of which is alleged, the threats do not constitute racketeering activity as defined under 18 U.S.C. § 1961(1) ("racketeering means (A) any act or threat involving murder, kidnapping [*sic*]. . ..").

constitutes a predicate racketeering act is "robbery."  Significantly, unlike larceny, force is a necessary element of robbery.  *People v. Woods*, 360 N.E.2d 1082, 1084 (N.Y. 1977) ("to sustain a charge of robbery, the People must show not only the taking of the property, but that the taking was accomplished by means of the use or threatened immediate use of physical force").  *See Matter of Mark T.*, 562 N.Y.S.2d 105, 106 (1st Dep't. 1990) ("A necessary element of robbery is the use or threatened use of physical force, which is not an element of grand larceny.").  Because fourth degree larceny does not, under New York law, require use or threatened use of force, and because Plaintiffs fail to allege Burt used any force to extract money from Plaintiffs, Defendants' conduct in obtaining Plaintiffs' funds for investment in the alleged fraudulent investment scheme does not constitute robbery under § 1961(1) and, as such, cannot serve as a predicate racketeering act to sustain a RICO violation.

Plaintiffs' allegations that Defendants engaged in interstate transportation of stolen property in violation of 18 U.S.C. § 2314 ("§ 2314"), mail fraud in violation of 18 U.S.C. § 1341, and wire fraud in violation of 18 U.S.C. § 1343, are actionable as securities fraud and, as such, are barred by the PSLRA, 18 U.S.C. § 1964(c), from consideration as predicate racketeering activity under RICO.  Specifically, in 1995, the PSLRA amended RICO by removing securities fraud as a predicate act in suits asserting civil RICO violations.  As amended, § 1964(c) now provides

> Any person injured . . . by reason of a violation of Section 1962 of this chapter may sue therefor . . . *except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of Section 1962*.

18 U.S.C. § 1964(c) (italics added).

The PSLRA bars conduct actionable as securities fraud from forming the predicate racketeering activity for a RICO claim, unless the "conviction exception" applies. The conviction exception provides that the bar to a RICO claim, as stated by § 1964(c) based on securities fraud, "does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final." 18 U.S.C. § 1964(c).

Prior to this amendment, "plaintiffs regularly elevated [investment] fraud to RICO violations because RICO offered the potential bonanza of recovering triple damages." *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327 (3d Cir. 1999) (hereinafter, "*Bald Eagle*") (bracketed material added). In amending RICO, Congress clearly stated that the PSLRA "was meant to eliminate the possibility that litigants might frame their securities claims under a mail or wire fraud claim." *Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Invs. Ltd.*, 205 F.Supp.2d 243, 248 (S.D.N.Y. 2002) (citing JOINT EXPLANATORY STATEMENT OF THE COMMITTEE OF CONFERENCE, H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 746). In removing securities fraud as a predicate civil RICO offense, Congress stated that

> The Conference Committee amends section 1964(c) of title 18 of the U.S. Code to remove any conduct that would have been actionable as fraud in the purchase or sale of securities as racketeering activity under civil RICO. The Committee intends this amendment to eliminate securities fraud as a predicate offense in a civil RICO action. In addition, the Conference Committee intends that a plaintiff may not plead other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud."

JOINT EXPLANATORY STATEMENT OF THE COMMITTEE OF CONFERENCE, H.R. Conf. Rep. No. 104-369 (1995).

*See also ABF Capital Management v. Askin Capital Management, L.P.*, 957 F.Supp. 1308, 1319 (S.D.N.Y. 1997) (stating PSLRA's legislative history was "unequivocal in stating that where allegations of mail and wire fraud derive from conduct otherwise actionable as securities fraud, no RICO claim will lie"); *Krear v. Malek*, 961 F.Supp. 1065, 1074 (E.D. Mich. 1997) ("It is abundantly clear that Congress intended that conduct constituting wire and mail fraud not form the basis of a predicate act under the amendment if such conduct would also be actionable as securities fraud.").

Similarly, claimed interstate transportation offenses in violation of 18 U.S.C. § 2314, pertaining to monies "stolen, converted or taken by fraud," if actionable as securities fraud, cannot serve as a predicate offense under RICO. *In re Enron Corp. Securities, Derivative and ERISA Litigation*, 284 F.Supp.2d 511, 622 (S.D.Tex. 2003) (hereinafter, "*In re Enron Corp.*") (citing *Bald Eagle*, 189 F.3d at 330). Significantly, Plaintiffs admit that Defendants' scheme to defraud Plaintiffs is properly characterized as a "Ponzi" scheme.[7] Plaintiffs' Order to Show Cause Memorandum at 17 ("It was just a Ponzi scheme."). "While a 'scheme to defraud' is an express element of mail and wire fraud, the complaint's allegations explicitly relate to all the other predicate acts charged, *i.e.*, . . . interstate transportation, to lure and keep [ ] investors in an

---

[7] Referencing the "remarkable criminal financial career of Charles Ponzi," *Cunningham v. Brown*, 265 U.S. 1, 7 (1924), a "Ponzi scheme" is a scheme whereby an investment entity operates at a loss, but gives the appearance of being profitable by "the influx of fresh capital from unwitting newcomers rather than through legitimate investment activity." *S.E.C. v. Credit Bancorp., Ltd.*, 290 F.3d 80, 89 (2d Cir. 2002) (citing *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 n. 3 (2d Cir. 1995)). Ponzi "was always insolvent, and became daily more so, the more his business succeeded. He made no investments of any kind, so that all the money he had at any time was solely the result of loans by his dupes." *Cunningham*, 265 U.S. at 8. Thus, as in this case, giving Plaintiffs' pleadings even the most favorable interpretation, even if Plaintiffs' investment funds were never used to purchase a security and then converted by Defendants, but were immediately converted by Defendants to their personal use, Plaintiffs' "investments" were, for purposed of § 1964(c)'s bar to assertion of a RICO claim, a form of investment fraud.

overarching Ponzi scheme to defraud. Thus, any conduct that sustains a securities fraud Ponzi scheme is intrinsically conduct undertaken 'in connection with the purchase or sale of securities' and is barred by the RICO Amendment." *In re Enron Corp.*, 284 F.Supp.2d at 622 (citing *Bald Eagle*, 189 F.3d at 330).

Moreover, despite Plaintiffs' argument to the contrary, Plaintiffs' Show Cause Response at 2-3, and 7-17, the fraudulent investment in which Defendants are alleged to have induced Plaintiffs to invest qualifies as one involving a "security" as defined in the Securities and Exchange Acts of 1933 and 1934 as including an "investment contract." 15 U.S.C. § 77b(a)(1); 15 U.S.C. § 78c(a)(10). An "investment contract" is "anything that investors purchase with '(1) an expectation of profits arising from (2) a common enterprise that (3) depends upon the efforts of others.'" *SEC v. Banner Fund Int'l.*, 211 F.3d 602, 614 (D.C.Cir. 2000) (citing *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298 (1946) (hereinafter "*Howey*")). This definition "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *Howey*, 328 U.S. at 298-99 (holding transaction by which investors purchased parcels of land in a citrus grove and a service contract pursuant to which seller was to cultivate the grove, market the produce, and remit profits to investors was an investment contract).

"A common enterprise within the meaning of *Howey* can be established by a showing of 'horizontal community': the tying of each individual investor's fortunes to the fortunes of the other investors by the pooling of assets, usually combined with the pro-rata distribution of profits." *Revak v. SEC Realty Corp.*, 18 F.3d 81, 87 (2d Cir. 1994)

(citing cases). "In a common enterprise marked by horizontal commonality, the fortunes of each investor depend upon the profitability of the enterprise as a whole. . . ." *Id*. Here, the facts alleged in the Complaint, as supplemented by the RICO statement, establish that an investment contract existed.

Specifically, Plaintiffs allege they anticipated the investment funds contributed to the Enterprise would yield profits. Complaint ¶¶ 13, 16, 26; RICO Statement at 2-5, and ¶ 4. Plaintiffs also allege Defendants advised that any money Plaintiffs invested into the Enterprise would be pooled with money from other investors, and that the profits from the pooled invested funds would be distributed on a pro-rata basis among the investors. Complaint ¶¶ 14, 20, 21, 22; RICO Statement at 2-5. The funds Plaintiffs contributed to the Enterprise were to be invested and managed only by Hurlburt and Burt, with Hurlburt also acting as investment counselor, financial asset manager, and agent. Complaint ¶¶ 13, 14, 16, 18, 19, 25, 26, 28, 31, 32, 34, 35, 38; RICO Statement at 2-5, and ¶ 2. In fact, the record is devoid of any indication that Plaintiffs anticipated having any role in the investment decisions on behalf of the Enterprise. The record thus establishes that Plaintiffs had an investment contract with Defendants, which qualifies as a "security" as defined in the Securities and Exchange Acts of 1933 and 1934.

Plaintiffs' attempt to avoid dismissal of the RICO claim based on their assertion that they have not alleged securities fraud but, rather, only conversion. Plaintiffs' Show Cause Memorandum at 2-3, is unavailing. A fair reading of the Compliant and RICO Statement reveals that Plaintiffs have indeed alleged mail fraud, wire fraud, and interstate transportation of stolen property as predicate racketeering activity in support

of the RICO claim. Complaint, Fifth Cause of Action, ¶¶ 96-116; RICO Statement ¶ 5(B) (alleging various incidents where Hurlburt and Burt, through use of the United States mails, Federal Express, internet transactions, and wire transfers, deposited funds intended for investment in the Enterprise and received disbursements from those funds, all in furtherance of the Enterprise). As discussed, Discussion, *supra*, at 20, Plaintiffs also admit that the alleged fraudulent scheme is a Ponzi scheme, Plaintiffs' Order to Show Cause Memorandum at 17 ("It was just a Ponzi scheme."), and, as noted, Discussion, *supra*, at 20, Ponzi schemes have repeatedly been held to be securities fraud. *In re Enron Corp.*, 284 F.Supp.2d at 622 (citing *Bald Eagle*, 189 F.3d at 330).

Plaintiffs' assertion that no securities fraud is pleaded, thereby triggering the § 1964(c) bar, is predicated on cases decided before the PSLRA's 1995 enactment. Plaintiffs' Show Cause Memorandum at 9-17 (citing cases, *e.g.*, *Bochicchio v. Smith Barney, Harris Upham & Co., Inc.*, 647 F.Supp. 1426 (S.D.N.Y. 1986), and *Bosio v. Norbay Securites, Inc.*, 599 F.Supp. 1563 (E.D.N.Y. 1985)). As stated, the PSLRA was particularly intended to end such litigation. JOINT EXPLANATORY STATEMENT OF THE COMMITTEE OF CONFERENCE, H.R. Conf. Rep. No. 104-369 (1995) ("a plaintiff may not plead other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud"). Further, Plaintiffs' reliance, Plaintiffs' Show Cause Memorandum at 14, on *Heine v. Colton, Hartnick, Yamin & Sheresky*, 786 F.Supp. 360, 369-70 (S.D.N.Y. 1992), for the proposition that no investment contract exists pursuant to *Howey* where no investment venture existed is misplaced as the instant case is

readily distinguishable.  Specifically, here, Plaintiffs have pleaded that Hurlburt was involved in day-trading, but that, even if legitimate at its outset, the day trading investment enterprise had become corrupted by the time Plaintiffs invested.  RICO Statement at 2 (explaining that the Hurlburt Investment Club began in 1999 with Hurlburt, who engaged in day trading, "invest[ing] money on behalf of himself and others, who all shared in the gains and losses" but that "scheme to defraud investors (like Plaintiffs) originated as an idea conceived by Defendants Burt and Hurlburt in or about 2000.").  As discussed, Discussion, *supra*, at 20-21, n. 7, even if Defendants intended upon receipt of Plaintiffs' funds to convert the funds rather than invest them, the fraud sprang from a purported investment, *i.e.*, Ponzi, scheme, thus bringing Plaintiffs' claim squarely within § 1964(c)'s RICO bar.  As such the PSLRA bars Plaintiffs' RICO claim at least against Burt who has not been convicted of any crime in connection with the Enterprise, a fact Plaintiffs do not dispute.

Finally, for purposes of asserting a valid RICO claim, racketeering activity in violation of 18 U.S.C. § 1952 ("§ 1952"), as relevant here, is committed by whoever "uses the mail or any facility in interstate or foreign commerce, with intent to . . . promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity," and thereafter performs or attempts to perform such unlawful activity.  18 U.S.C. § 1952(a).  For purposes of § 1952, "unlawful activity" is defined, in pertinent part, as "any act which is indictable . . . under section 1956 or 1957 of this title."  18 U.S.C. § 1952(b).

Because 18 U.S.C. § 1956 ("§ 1956") pertains to money laundering, which Plaintiffs do not allege, only 18 U.S.C. § 1957 ("§ 1957") is applicable.  Section 1957

prohibits engaging in monetary transaction in property derived from specified unlawful activity, to wit, any act or activity constituting an offense under § 1961(1). 18 U.S.C. § 1957(f)(3) (referencing 18 U.S.C. § 1956(c)(7)). As discussed above, Discussion, *supra*, at 17-24, however, none of the conduct Plaintiffs allege as predicate acts for the RICO violations under § 1961(1) actually qualify as such predicate acts. Accordingly, Plaintiffs have not sufficiently alleged racketeering activity in violation of § 1952 and cannot rely on such violation as a predicate RICO act.

Plaintiffs have thus failed to allege the requisite minimum two predicate acts to establish any RICO violation, requiring dismissal of the RICO claim against Burt. Although Burt seeks either dismissal or summary judgment of the RICO claim as against himself, the parties were directed to explain whether the PSLRA barred the RICO claim against both Burt and Hurlburt. Show Cause Order at 4. Plaintiffs maintain that even if the PSLRA bars the RICO claim against Burt, the RICO claim should be allowed to proceed against Hurlburt under the PSLRA's criminal conviction exception because Hurlburt was criminally convicted in connection with the fraud at issue, and Plaintiffs' receipt of "restitution is irrebuttable proof that [Plaintiffs] were victims of Defendant Dustin Hurlburt's criminal wrongdoing."). Plaintiffs' Show Cause Memorandum at 17. Defendant Burt agrees that the RICO claim against Hurlburt is within the criminal conviction exception. Burt's Show Cause Memorandum at 3.

It is undisputed that Hurlburt has pleaded guilty to one count of mail fraud in connection with the Enterprise's unlawful activity. The PSLRA's "criminal conviction exception" provides that bar to a RICO claim based on securities fraud "does not apply to an action against any person that is criminally convicted in connection with the fraud,

in which case the statute of limitations shall start to run on the date on which the conviction becomes final." 18 U.S.C. § 1964(c). At this time, however, the conviction exception can apply only to Hurlburt, who was convicted by plea of one count of mail fraud in connection with the Enterprise. *Krear*, 961 F.Supp. at 1076. Further, only those plaintiffs who have been found, by way of the defendant's criminal conviction, to have been criminally defrauded may avail themselves of the conviction exception. *Id*. at 1077 ("those plaintiffs who were not found to have been criminally defrauded cannot, by merely asserting that a Ponzi scheme existed, invoke the 'conviction exception.' To hold otherwise would allow the anomalous situation of permitting a plaintiff who was not criminally defrauded and who would not otherwise be entitled to bring a civil RICO action to, in fact, bring such an action simply because he claims to be part of an alleged Ponzi scheme."). The parties do not dispute that Plaintiffs were among the victims of the specific mail fraud to which Hurlburt pleaded guilty. Plaintiffs' Show Cause Memorandum at 17; Burt's Show Cause Memorandum at 3.

Nevertheless, Hurlburt's conviction of only one count of mail fraud in connection with the Enterprise, establishes only one predicate act, rather than at least two, and, as discussed in connection with Burt, Discussion, *supra*, at 17-24, no other alleged conduct constitutes racketeering activity. *See Krear*, 961 F.Supp. at 1068 (RICO claim allowed to proceed against defendant who had pleaded guilty to six counts of wire fraud). As such, the RICO claim should also be dismissed as against Hurlburt.

Furthermore, although the RICO Claim is asserted against "the Defendants," indicating that the claim is also asserted against Lisa Hurlburt and the Enterprise, Complaint, Fifth Cause of Action, both the Complaint and the RICO Statement are

devoid of any alleged racketeering activity on behalf of either Lisa Hurlburt or the Enterprise, other than the alleged mail fraud and wire fraud which, as discussed, in the absence of some criminal conviction, cannot, pursuant to § 1964(c), serve as predicate racketeering activity.  *See* Discussion, *supra*, at 17-24.   Because neither Lisa Hurlburt nor the Enterprise has been criminally convicted of the alleged mail fraud or wire fraud, the RICO claim should also be dismissed as against them.

Defendant's motion to dismiss should be GRANTED insofar as the Complaint, as supplemented by the RICO Statement, fails to state a civil RICO claim, and the RICO claim should be dismissed as against all Defendants.


**3.      State Law Claims**

**A.      Pendent Jurisdiction**

With the dismissal of the RICO claim against all Defendants, only the state claims will remain pending, over which the court has only supplemental jurisdiction pursuant to 28 U.S.C. § 1367 which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367 (a).  The court, however, may decline to exercise supplemental jurisdiction over a state law claim where (1) the court has dismissed all claims over which it has original jurisdiction, or (2) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367(c)(2),(3).

In exercising its discretion whether to retain supplemental jurisdiction over pendent state claims, the district court must balance several factors, including considerations of judicial economy, convenience, and fairness to the parties. *Correspondent Services Corp. v. First Equities Corp. of Florida*, 338 F.3d 119, 126-27 (2d Cir. 2003). "In general, where the federal claims are dismissed before trial, the state law claims should be dismissed as well." *Marcus v. AT &T Corp.,* 138 F.3d 46, 57 (2d Cir. 1998); *see also Giordano v. City of N.Y.,* 274 F.3d 740, 754 (2d Cir. 2001) (once federal claims are dismissed, whether plaintiff is disabled under New York state law "is a question best left to the courts of the State of New York"). "[T]the discretion implicit in the word 'may' in subdivision (c) of § 1367 permits the district court to weigh and balance several factors, including considerations of judicial economy, convenience and fairness to litigants." *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) (citing *Castellano v. Bd. of Tr.*, 937 F.2d 752, 758 (2d Cir. 1991)). Where "dismissal of the federal claim occurs 'late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair. Nor is it by any means necessary.'" *Purgess*, 33 F.3d at 138 (quoting 28 U.S.C. § 1367, Practice Commentary (1993) at 835).

A district court abuses its discretion by exercising supplemental jurisdiction over state law claims, despite the dismissal of all federal claims, "where the federal claims had been dismissed at a relatively <u>early</u> stage and the remaining claims involved issues of state law that were unsettled." *Valencia ex. rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003) (underlining added) (citing *Giordano v. City of New York*, 274 F.3d 740,

754 (2d Cir. 2001)); *see also Oliveira v. Frito-Lay, Inc.*, 251 F.3d 56, 64 (2d Cir. 2001);

*Seabrook v. Jacobson*, 153 F.3d 70, 71-73 (2d Cir. 1998)).  In contrast, a district court's

decision to retain state claims after dismissing all federal claims where the question

arises late in the proceedings will be affirmed.  *See Purgess*, 33 F.3d at 139 (holding

district court did not abuse its discretion by exercising supplemental jurisdiction over

state claims where four of five federal claims were dismissed on the eve of trial, final

federal claim was dismissed after the close of all the evidence, the parties had spent

years preparing for trial in federal court, jury had heard evidence for several days and

was ready to begin deliberations, and it would have been wasteful to subject case to

another full trial before a different tribunal).  Prior to declining to exercise supplemental

jurisdiction over state law claims, however, the district court should consider whether

the litigants will be prejudiced by the decision.  *Correspondent Services Corp.*, 338 F.3d

at 127.

     Although this case is not at an especially early stage, as stated, Background,

*supra*, at 2-3, this case was originally filed in state court on March 11, 2004, where it

remained until February 1, 2007, when, subsequent to the amendment of the complaint

to add the RICO claim, the action was removed to this court.  As such, the action was

pending in state court for almost three years before its removal to this court With the

dismissal of the RICO claim, remaining in the action are state common law claims for

conversion, fraud, misrepresentation, breach of fiduciary duty, request for an

accounting, breach of contract, breach of implied contract, and breach of duty to a third

party beneficiary under a contract.  The Western District of New York's very heavy

caseload is one more reason to decline exercising supplemental jurisdiction over

common state claims that will likely reach trial earlier in the state court where Plaintiffs originally lodged the action based solely on the state claims and where the RICO claim could have been litigated without removal.[8]  Under these circumstances, the court should decline to exercise its supplemental jurisdiction over the remaining state law claims, and the action, asserting only state claims, remanded to state court.  *See Carlsbad Technology v. HIF BIO Inc.*, __ U.S. __, 129 S.Ct. 1862, 1866 (2009) (holding, with regard to action removed from state court, that after dismissing federal RICO claim, the only claim over which the district court had original jurisdiction, district court could, in its discretion, either exercise, under 28 U.S.C. § 1367(c), supplemental jurisdiction over the remaining state law claims, or remand the pendent state claims to state court from which the action had been removed).

### B.    Merits of State Claims

Alternatively, should the District Judge disagree that the RICO claim should also be dismissed against Hurlburt, then the state law claims pending against Burt in this action should not be dismissed for failure to state a claim, nor is Burt entitled to summary judgment on such claims.  Plaintiffs assert six claims under New York common law,[9] including conversion (First Cause of Action), fraud based on misrepresentation (Second Cause of Action), breach of fiduciary duty (Third Cause of Action), breach of contract (Sixth Cause of Action), breach of duty to a third party

---

[8] *See* Discussion, *supra*, at 3, n. 1.

[9] The parties do not dispute that Plaintiffs' state claims are subject to New York law.

beneficiary under a contract (Seventh Cause of Action), breach of implied contract (Eighth Cause of Action).[10]

### 1. Conversion

Burt seeks dismissal of Plaintiffs conversion claim on the basis that Plaintiffs neither allege and cannot prove that Burt had access to and controlled any of the funds Plaintiffs invested with Hurlburt. Defendant's Summary Judgment Memorandum at 10-11. In opposition to the motion, Plaintiffs point to evidence in the record that Burt did have means to access or control funds in the Enterprise's investment account. Plaintiffs' Summary Judgment Memorandum at 21. In further support of dismissal of the conversion claim, Burt maintains there is no evidence that Burt had any control over the Enterprise's investment account. Defendant's Summary Judgment Reply Memorandum at 7-8.

The tort of conversion is defined under New York law as "the 'unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Vigilant Insurance Company of America v. Housing Authority of the City of El Paso, Texas*, 660 N.E.2d 1121, 1126 (N.Y. 1995) (quoting *Employers' Fire Ins. Co. v. Cotten*, 156 N.E. 629, 630 (N.Y. 1927)). "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Colavito v. New York Organ Donor Network, Inc.*, 860 N.E.2d 713,

---

[10] Plaintiff's Fourth Cause of Action seeks an order directing an accounting and imposition of a constructive trust over Defendants' assets.

717 (N.Y. 2006) (citing cases).  In the instant case, Plaintiffs have sufficiently stated a plausible conversion claim by alleging that on September 11, 2003, Rechberger handed Hurlburt the checks, including a $ 300,000 check drawn on a bank account for the trust, and a $ 25,000 check drawn on Rechberger's personal bank account on behalf of Karen Rechberger who, days before, had transferred said funds from a securities trading account she maintained at UBS Paine Webber.  Complaint ¶¶ 34-40, and Exhs. D and E.  Plaintiffs further allege that Burt obtained access to the Enterprise's internet investment account, and took funds from the Enterprise account through such access, eventually receiving a majority of the funds from the Enterprise account.  Complaint ¶¶ 54-61.  Such allegations sufficiently state a claim for conversion under applicable New York law.

Also, evidence in the record establishes a material issue of fact as to whether Plaintiffs' allegations of conversion against Burt are true, precluding summary judgment on this claim.  In particular, evidence in the record establishes that on September 11, 2003, Hurlburt deposited the checks received from Rechberger into the Hurlburt Investment Club's bank account at Wyoming County Bank.  *See* Plaintiffs' Show Cause Exh. A (bank statement for Hurlburt Investment Club's account with Wyoming County Bank, and canceled checks showing $ 325,000 deposit made on September 11, 2003, consisting of a $ 300,000 check from the trust, and a $ 25,000 check from Edward H. Rechberger, IV).   Furthermore, whether Burt obtained access to the Enterprise's internet investment account, from which Burt then removed funds for his own personal use, as alleged, Complaint ¶ 60; RICO Statement ¶¶ 2(d), and 12, is a matter of disputed fact requiring trial.  *See*, *e.g.*, Plaintiffs' Summary Judgment Exh. B,

September 19, 2005, Deposition Testimony of Hurlburt, at 97-98, and attached Exhibit 7, Trustee Certification of Investment Powers for Hurlburt Investment Club ("Trustee Certification") (explaining that Burt's signature on the Trustee Certification listing as Trustees Burt and Hurlburt, gave both Burt and Hurlburt authority over the Enterprise account); and Plaintiffs' Summary Judgment Exh. G (July 31, 2008 CPA review of financial records of Burt, Hurlburt, and the Enterprise, showing inconsistencies between Enterprise financial activity recorded by Burt, as compared to Hurlburt, and that Burt withdrew more than he deposited). As such, summary judgment on the conversion claim against Burt should be DENIED.

### 2. Fraud Based on Misrepresentation

In support of dismissal, Burt maintains he made no misrepresentation and did not cause Plaintiffs to invest in the Enterprise, nor is there any evidence that Burt did so. Defendant's Summary Judgment Memorandum at 11-12. In opposition to the motion, Plaintiffs maintain that all elements of a fraud claim are fully set forth in the Complaint, and that deposition testimony from Hurlburt establishes the existence of a material issue of fact precluding summary judgment on the claim. Plaintiffs' Summary Judgment Memorandum at 22-23. In further support of his motion, Burt argues that Plaintiffs' failure to controvert Defendant's Statement of Facts Nos. 6-13, "completely undermines" Plaintiffs' fraud claims, and that the only evidence on which Plaintiffs rely in support of the fraud claim are documents generated after Plaintiffs invested in the Enterprise on which Plaintiffs could not have relied in deciding to invest. Defendant's Summary Judgment Reply Memorandum at 8.

To recover for fraud based on misrepresentation, as opposed to fraud based on a material omission of fact, Plaintiffs must prove a misrepresentation of fact, known by Burt to be false, made to induce Plaintiffs to rely upon it, justifiable reliance by Plaintiffs on the misrepresentation, and injury. *Lama Holding Co. v. Smith Barney, Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996). Further, particularity requirement of Fed. R. Civ. P. 9(b) ("Rule 9(b)"), "states that in averments of fraud, 'the circumstances constituting fraud . . . shall be stated with particularity.'" *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172 (2d Cir. 1999) (quoting Fed. R. Civ. P. 9(b)).

Here, Plaintiffs allege that "in late July or early August 2003, Burt met with Serventi, in Serventi's Perry, New York offices on numerous occasions to induce Serventi to participate in the Enterprise by contributing funds for Hurlburt to invest . . . ." Complaint ¶ 10. Plaintiffs maintain that at such meetings, "Burt provided Serventi with certain written investment reports," *id.* ¶ 11, advising the reports "were legitimate and truthful, and that they evidenced Hurlburt's expertise, proficiency and success as an investment counselor and financial asset manager for Burt. *Id*. ¶ 12. At the meetings, Burt is also alleged to have "made lengthy verbal statements and representations to Serventi" regarding Hurlburt's success, advising that others had given Hurlburt money to invest, that such funds were pooled and all investors shared in the gains or losses of the Enterprise. Complaint ¶¶ 18-22. Burt is further alleged to have represented to Plaintiffs that no funds they invested in the Enterprise could be withdrawn without Plaintiffs' prior authorization. *Id*. ¶ 24. These allegation sufficiently state a fraud claim against Burt.

Despite Burt's argument to the contrary, evidence in the record establishes

material issues of fact precluding summary judgment on the fraud claim against Burt.

Preliminarily, the court observes that even if Plaintiffs failed to controvert Defendant's

Statement of Facts Nos. 6-13, such that the statements must be taken as true, *Hannon*

*v. Wilson Greatbatch, Ltd.*, 2002 WL 1012971, * 1 and n. 4 (W.D.N.Y. Apr. 24, 2002),

such statements do not necessarily negate a finding that Burt is liable for fraud.  Rather,

the statements establish that Burt never requested Serventi invest with Hurlburt,

Statement No. 6, Burt never arranged any meeting between Serventi and Hurlburt,

Statement No. 7, Plaintiffs' decision to invest occurred only after Rechberger and

Serventi met with Hurlburt at a restaurant in Warsaw, New York, Statement No. 8, that

Hurlburt's responses to Rechberger's "extensive" questioning convinced Plaintiffs to

invest in the Enterprise, Statement No. 9, that Plaintiffs' decision to invest was made

immediately following the restaurant meeting, Statement No. 10, that Plaintiffs had no

further communications with Burt until after the FBI raided Hurlburt's home in November

2003, Statement No. 11, that Rechberger gave the checks to be invested into the

Enterprise to Hurlburt, Statement No. 12, at which time Rechberger spent 45 minutes

observing Hurlburt making "mock" trades, with which Burt had no involvement.

Statement No. 13.  Even if true, such statements are not inconsistent with Plaintiffs'

allegations that Burt met with Serventi several times in late July or early August 2003,

during which meetings Plaintiffs allege Burt made false representations regarding

Hurlburt's success as a day trader to induce Plaintiffs to invest in the Enterprise.  *See*,

*e.g.*, Serventi Summary Judgment Affidavit ¶¶ 3-7 (Serventi averring that during the

summer of 2003, Serventi met with Burt once at Serventi's place of business and once

at Burt's place of business, that during both meetings Burt presented Serventi with

investment statements purportedly reflecting Burt's successful investments through the Enterprise, and made statements encouraging Serventi to also invest).

Defendant Burt also challenges Plaintiffs' assertion that the investment statements Burt shared with Serventi at the late July, early August 2003 meetings were both prepared by Burt and were fraudulent ("the fraudulent investment statements").[11] Defendant's Summary Judgment Memorandum at 11-12; Defendant's Summary Judgment Reply Memorandum at 8. Burt does not dispute that investment statements shown to Plaintiffs were fraudulent; rather, Burt urges there is no proof that he, rather than Hurlburt, created the statements. Defendant's Summary Judgment Reply Memorandum at 8. Plaintiff argues in opposition that circumstantial evidence in the record indicates that Burt was involved in preparing fraudulent investment statements, including the initial investment statements provided to Plaintiffs after Plaintiffs invested in the Enterprise. Plaintiffs' Summary Judgment Memorandum at 22-23. In particular, Plaintiffs point to the fact that the initial statement provided for Karen Rechberger's account erroneously names as the account holder "Michele Rechberger" who is Rechberger's mother, whom Hurlburt does not know, but who is a longtime acquaintance of Burt, and that such statements were prepared while Hurlburt was undergoing eye surgery and was unable to create any documents. *Id*. at 23. Such evidence is circumstantial evidence that Burt was involved in creating the fraudulent investment statements presented to Serventi at meeting with Burt during the summer of 2003. *See Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001)

---

[11] Copies of the fraudulent investment statements are attached to the Complaint as Exh. A.

(stating holding that in the absence of direct evidence of alleged unlawful conduct, plaintiff "must defeat summary judgment on the strength of his prima facie case combined with circumstantial evidence"). Moreover, whether Burt prepared the fraudulent investment statements and presented them to Serventi, as well as whether such statements influenced Serventi's decision to invest in the Enterprise, is a disputed issue of material fact that can only be resolved after a trial on the merits. Accordingly, summary judgment on the fraud claim against Burt should be DENIED.

### 3. Breach of Fiduciary Duty

Defendant moves for dismissal of Plaintiffs' breach of fiduciary duty claim, arguing Plaintiffs failed to allege any fiduciary relationship between Plaintiffs and Burt. Defendant's Summary Judgment Memorandum at 12-13. In opposition, Plaintiffs assert that Burt, as a trustee of the Enterprise, undertook fiduciary duties to Plaintiffs. Plaintiffs' Summary Judgment Memorandum at 23-24. In further support of dismissal and summary judgment, Defendant asserts that Plaintiffs reference no legal authority supporting their theory that Burt owed Plaintiffs any fiduciary duty in the absence of any evidence that Burt bought, sold, or traded any securities in Hurlburt's Investment Club accounts. Defendants' Reply Memorandum at 9.

The elements of a cause of action for breach of fiduciary duty are (1) the existence of a fiduciary relationship; (2) misrepresentation by the defendant; (3) directly causing damages to the plaintiff. *Kurtzman v. Bergstol*, 835 N.Y.S.2d 644, 646 (2d Dep't. 2007) (citing *Ozelkan v. Tyree Bros. Envtl. Servs. Inc.*, 815 N.Y.S.2d 265, 267 (2d Dep't. 2006)). Here, not only do Plaintiffs allege that Burt was a fiduciary with

regard to the Enterprise, Complaint ¶ 9 (alleging that Burt and Hurlburt "owned, maintained, operated and/or controlled" the business of the Hurlburt Investment Club), but also point to documentary evidence establishing that Burt was, in fact, a trustee of the Hurlburt Investment Club. *See* Plaintiffs' Summary Judgment Exh. B, Exh. 7 (Trustee Certification listing as Trustees Burt and Hurlburt). Further, on a $ 500,000 Allstate Life Insurance Company of New York life insurance policy, dated March 4, 2002, and insuring Hurlburt, Hurlburt's occupation is listed as "pattern day trader," and Burt is denominated as Hurlburt's "business partner" and as the policy's sole beneficiary. *Id*. Significantly, Burt has not challenged the accuracy of these documents. Furthermore, the evidence in the record at least establishes a material issue of fact as to whether such documents created a special relationship sufficient to impose a constructive trust, casting Burt in a fiduciary role with Plaintiffs.

"New York law generally requires four elements for a constructive trust: '(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject *res* made in reliance on that promise; and (4) unjust enrichment.'" *In re First Central Financial Corp.*, 377 F.3d 209, 212 (2d Cir. 2004) (quoting *United States v. Coluccio*, 51 F.3d 377, 340 (2d Cir. 1995)). *Accord*, *Consumers Union of U.S., Inc. v. State*, 840 N.E.2d 68, n. 14 (N.Y. 2005) ("a constructive trust is only imposed upon a finding of '(1) a confidential or fiduciary relation, (2) a promise, express or implied, (3) a transfer made in reliance on that promise, and (4) unjust enrichment'" (quoting *Bankers Sec. Life Ins. Soc. v. Shakerdge*, 406 N.E.2d 440, 440 (N.Y. 1980))). Here, there is a question as to the precise nature of Burt's relationship with Serventi, with whom Burt met several times during the summer of 2003 to discuss investing in the Enterprise.

*See, e.g.*, Complaint ¶¶ 10-13; First Serventi Sanctions Declaration ¶¶ 2-3 (explaining Serventi has known Burt for 53 years, and that Serventi had, since 2000, "maintained an office directly across the street from Defendant Burt's place of business."). Whether Burt did, as Plaintiffs allege, repeatedly assure Serventi that investing in the Enterprise was a wise financial decision is a question of fact which, if determined to be true, could establish an implied promise on which Plaintiffs relied in investing in the Enterprise. Plaintiffs have repeatedly asserted their decision to invest in the Enterprise was predicated in part on Burt's statements regarding the profits Burt had realized as a result of his investment in the Enterprise, bolstered by the performance reports Burt displayed to support his statements. *See, e.g.*, Complaint ¶¶ 10-13, 18-21, 24, 27; Serventi First Sanctions Declaration ¶¶ 5-8. Finally, there is evidence in the record that Burt was unjustly enriched as a result of Plaintiffs' investment, particularly the dearth of any explanation as to what happened to the $ 325,000 Plaintiffs invested on September 11, 2003, less than two months before the FBI raided Hurlburt's home and seized the Enterprise's assets.

Plaintiffs at that time should be permitted to establish through production of the underlying trust agreement referenced therein, testimony, the document itself, or other admissible evidence, that a trust existed, thereby implying any money received through the Hurlburt Investment Club was held in trust pursuant to the fiduciary or special relationship with Burt, the breach of which is actionable under New York law. Should Plaintiffs' allegations discussed in connection with the fraud claim be determined by a finder of fact to be true, the same finder of fact could determine that Burt breached a fiduciary duty owed to Plaintiffs.

Summary judgment on Plaintiffs' breach of fiduciary duty claim should be DENIED as against Burt.

### 4. Breach of Contract

Burt argues in support of dismissal that Plaintiffs have failed to allege the essential elements of a claim for breach of contract, requiring dismissal of the claims for breach of express contract, breach of implied contract, the third party beneficiary claim, and the money provided and received claim.  Defendant's Summary Judgment Memorandum at 13.  According to Burt, there is no admissible evidence supporting any of these claims.  *Id*.  In opposition to the motion, Plaintiffs point to the Trading Authorization executed by Rechberger and Karen Rechberger, thereby authorizing Hurlburt to act as their agent and to trade through the Enterprise investment securities on their behalf and thus forming a contract between Plaintiffs and the Enterprise. Plaintiffs' Summary Judgment Memorandum at 24.  Plaintiffs maintain that as a trustee of the Enterprise, Burt is a necessary party to that contract.  *Id*.  In further support of dismissal of these claims, Burt characterize Plaintiffs' argument as without any evidentiary support.  Defendant's Reply Memorandum at 9.

Preliminarily, the court observes that attached as Exhibit C to the Complaint is a copy of a document entitled "Investment Club Member Signature Page for Trading Authorization."  The document is signed by Edward H. Rechberger, IV, Karen K. Rechberger, and Lewis J. Serventi.  Attached as Exhibit B to the Complaint is a copy of a letter dated September 8, 2003, from Hurlburt to Rechberger.  As relevant, the letter states, "[e]nclosed please find a copy of the Investment Club Member Signature Page

that I need you to sign." Complaint Exh. B. The combination of these two exhibits is sufficient circumstantial evidence that Plaintiffs executed the Trading Authorization, thereby contracting with the Enterprise for trades to be conducted on Plaintiffs' behalf. Because the evidence suggests a reasonable inference that Burt was Hurlburt's business partner with regard to the Enterprise, as well as a trustee of the Enterprise, Burt can be held liable for any breach of the contract by the enterprise. N.Y. Partnership Law § 24 (McKinney's 2005) (providing partnership is bound by the wrongful act of a partner); N.Y. Partnership Law § 26(1)[1] and [2] (McKinney's 2005) (providing for joint and several liability among partners for wrongful conduct of the partnership, unless the wrongdoing partner separately entered into the breached contractual obligation). That evidence shows Plaintiffs' money was never invested pursuant to the Trading Authorizations may also constituted a breach of Plaintiffs' contract with the Enterprise. Whether Plaintiffs can actually recover against Burt on the breach of contract claims must await trial.

Defendant's motion seeking dismissal or, alternatively, summary judgment with regard to Plaintiffs' breach of contract claims should be DENIED.


**4.     Sanctions Motion**

Defendant Burt also moves under Fed. R. Civ. P. 11 ("Rule 11"), 28 U.S.C. § 1927 ("§ 1927"), and the court's inherent power to sanction, for an award of sanctions including the costs of the motion and attorneys' fees, arguing that Plaintiffs, prior to commencing this action, failed to reasonably investigate their claims against Burt, and have no admissible evidence to support their allegations against Burt, such that the

claims against Burt are frivolous. Defendant's Sanctions Memorandum at 2-4.

According to Burt, Plaintiffs's claims are without any evidentiary basis other than "prior

inadmissible statements by Hurlburt." *Id*. at 4. In opposition to sanctions, Plaintiffs

maintain that Burt's reference to Hurlburt's "prior inadmissible statements" is to sworn

deposition testimony of Hurlburt, which is admissible to defeat summary judgment.

Plaintiffs' Sanctions Memorandum at 1. Plaintiffs further maintain that evidence

submitted in opposition to summary judgment that Burt was more than just a passive

investor in the Enterprise establishes Plaintiffs' claims are not without any basis. *Id*. at

3-9. In further support of sanctions, Burt maintains that the absence in the record of

any explanation as to why Burt was not named as a defendant in the original complaint,

or why Plaintiffs, in connection with Hurlburt's criminal proceedings, submitted a

supplemental victim impact statement, withdrawing from Plaintiffs' earlier position that

Hurlburt receive the maximum sentence permitted for the mail fraud conviction.

Defendant's Sanctions Reply Memorandum at 1-3.

Fed.R.Civ.P. 11(c) provides that the court may impose an appropriate sanction

upon any party that has presented frivolous claims to the court. Such sanctions may be

of a nonmonetary or monetary nature and may include the payment of the attorney fees

incurred by the defendant in opposing frivolous claims. Fed.R.Civ.P. 11(c)(2). A "Rule

11 motion must 'be made *separately* from other motions or requests and shall describe

the specific conduct alleged to violate' the rule." *Martens v. Thomann*, 273 F.3d 159,

178 (2d Cir. 2001) (italics in original) (quoting Fed. R. Civ. P. 11(c)(1)(A)). "The rule

also contains a 'safe harbor' provision under which the movant must wait twenty-one

days after service of the motion on the party against whom it seeks sanctions and may

filed the motion only if the respondent has not withdrawn or corrected the allegedly offending materials by that time." *Id*. *See ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) ("When the sanctions process is initiated by a motion from an opposing party (under Rule 11(c)(2)), the challenged lawyer has a 21-day 'safe harbor' to withdraw or amend [the frivolous claim].").

In this case, Defendant Burt fails to assert, and Plaintiffs do not maintain, that Burt first served Plaintiffs with the motion for sanctions, and then waited 21 days to permit Plaintiffs time to withdraw any frivolous claims, prior to filing the motion in this court. Because Defendant did not serve Plaintiffs with the motion at least 21 days prior to filing the motion in this court, Defendant failed to permit Plaintiffs to take advantage of Rule 11's safe harbor provision, and the motion must be denied. *Martens*, 273 F.3d at 178 (holding district court abused its discretion in imposing Rule 11 sanctions on attorneys where, *inter alia*, the attorneys were not offered the 21-day "safe harbor").

Nor can § 1927 serve as a basis for sanctions against Plaintiffs. In particular, "the imposition of sanctions under § 1927 requires 'a clear showing of bad faith on the part of an attorney,' and that bad faith may be inferred 'only if the actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" *Salovaara v. Eckert*, 222 F.3d 19, 35 (2d Cir. 2000) (quoting *Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996)). Here, as discussed above, although the record establishes the RICO claim is without merit, Plaintiffs' state law claims are sufficiently stated against Burt, and also survive summary judgment. Defendant Burt's arguments in support of sanctions do not conclusively establish the lack of any proper motive for Plaintiffs to add Burt as a

Defendant with regard to the state law claims.  A fair reading of the record suggests Burt acted as a knowing solicitor for Hurlburt's investment scheme.

A district court also "has the inherent power to supervise and control its own proceedings and to sanction counsel or a litigant for bad-faith conduct."  *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995) (citing *Cambers v. NASCO*, 501 U.S. 32 43-50 (1991)).  Where, however, there is some colorable basis for bringing an action, it is an abuse of discretion to sanction for bad faith.  *Sussman*, 56 F.3d at 60.  Because at least some of the state law claims survive summary judgment, it cannot be said that the entire action was brought in bad faith.

Moreover, Defendant did not argue in support of either dismissal or summary judgment on the RICO claim that such claim was barred by the PSLRA.  Rather, it was not until responding to the Show Cause Order, filed on November 5, 2009, that either party indicated any recognition of the potential bar to the RICO claim, establishing a lack of familiarity with applicable RICO law by both Plaintiffs and Defendants.  Under these circumstances, ordering one side to bear the costs of litigating the RICO claim, whether pursuant to Rule 11, § 1927, or the court's inherent power to sanction for bad-faith conduct, would only show preference for one side's paucity of knowledge of RICO law over the other side's equal deficit.

As such, Burt's sanctions motion should be DENIED.

## CONCLUSION

Based on the foregoing, Defendant Burt's motion for summary judgment (Doc. No. 62) should be GRANTED with regard to the RICO claim, but DENIED with regard to the state law claims; the matter should be REMANDED to state court; Defendant Burt's motion for sanctions (Doc. No. 63) should be DENIED.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      January 12, 2010
            Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); Wesolek v. Canadair Limited, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      January 12, 2010
            Buffalo, New York